THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* HÉCTOR JUAN DÍAZ TORRES, Defendant and Appellant.

No. CR-62-405.    Decided December 30, 1963.

*Elí B. Arroyo* for appellant. *J. B. Fernández Badillo, Solicitor General*, and *Jenaro Marchand, Assistant Solicitor General*, for The People.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE RIGAU delivered the opinion of the Court.

Appellant was convicted of the offense of driving a motor vehicle under the influence of intoxicating liquor, § 5-801 of the Vehicle and Traffic Law, 9 L.P.R.A. § 1041. He was sentenced to serve 10 days in jail, and, as required by the law, his driver's license was suspended for the period of one year counted as of March 15, 1961, when judgment was rendered.

He assigns the errors enumerated and discussed below:

1. That § 5-801 *supra* of the Act is unconstitutional because it violates the constitutional right of a person against "abusive attacks on his honor, reputation and private or family life." The contention is frivolous. There is nothing in that section to constitute such abusive attack. Briefly, what that section merely provides is (a) that it shall be unlawful for any person who is under the influence of intoxicating liquor to drive or operate a motor vehicle, and (b) that in any criminal prosecution for a violation thereof, the amount of alcohol in defendant's blood at the time of committing the violation, as shown by the chemical analysis of his blood, urine or breath, shall give rise to the presumptions set forth therein. Lastly, it provides that the same shall not be construed as limiting the introduction of any other competent evidence to prove the case.

Going beyond § 5-801, it cannot be maintained either that the Vehicle and Traffic Law violates that constitutional right against attacks on the honor and reputation of persons. That Act regulates the traffic on our public highways—an indispensable function in any modern community—and prescribes penalties for violations thereof. Society has the right to demand that those who drive motor vehicles should not be intoxicated. As stated by the Supreme Court of the United States in *Breithaupt* v. *Abram*, 352 U.S. 432, 435 (1957), there is nothing "offensive" in the taking of a sample of blood of a person who is under the protective eye of a physician. The Court further said at p. 436 that blood tests have become routine in our everyday life; it is a ritual for those going into the military service, those applying for marriage licenses, and many colleges and universities require them before permitting entrance of students.

The Court added at p. 439 that, against the right of an individual that his person be held inviolable, must be set the interests of society in the scientific determination of intoxication of drivers, one of the great causes of the mortal hazards of the road. And the more so, said the Court, since the blood test likewise may establish defendant's innocence, thus affording protection to persons innocent of the offense involved. The Court further said at p. 439 that since our criminal law is to no small extent justified by the assumption of deterrence, the individual's right to immunity from such invasion of the body as is involved in a blood test is far outweighed by the value of its deterrent effect due to public realization that the issue of driving while under the influence of alcohol can often by this method be taken out of the confusion of conflicting contentions.

■ These statutory provisions relating to blood, breath and urine tests for determining the degree of intoxication of drivers have become generalized in every place where automobiles and the use of liquor have created a problem of

public safety. At least 26 states of the United States already have laws similar to ours on the matter. In 1957 the Conference Commissioners on Uniform State Laws and the American Bar Association imparted their approval to a Uniform Chemical Tests for Intoxication Act. For an interesting report on the matter, see the preface to that Uniform Act (Commissioner's Prefatory Note) in 9 U.L.A., Supp. 1962, p. 48. The said Uniform Act appears in that supplement at p. 52 *et seq.* There is also a wealth of information and of citations of authorities in footnote 3, p. 436 of *Breithaupt* v. *Abram, supra.* The constitutionality of those legal provisions has been definitively upheld. See *Breithaupt* v. *Abram, supra; Blackford* v. *United States,* 247 F.2d 745 (1957); *United States* v. *Nesmith,* 121 F.Supp. 758 (1954); the Annotation in 25 A.L.R.2d 1407 (1952); the other cases and authorities cited in footnote 4 of *People* v. *Superior Court,* 84 P.R.R. 378 (1962); the sources cited hereinabove; and also Alm and Stefanson, *"Chemical Tests for Intoxication: A Legal, Medical and Constitutional Survey,"* 37 N.D.L. Rev. 212 (1961). In this elaborate article the constitutional problems are discussed at p. 232 *et seq.*

■ 2. That § 5-801 *supra* is unconstitutional because it embraces a subject which is not clearly expressed in its title. This contention is also without merit. What the Constitution requires is that *the subject,* namely, the theme or matter treated in the law, be clearly expressed in its title.[1] The Constitution does not require that the details or the procedures prescribed in the laws be expressed in their titles. Such a claim would be absurd; the result of such a claim would be that the titles would be exceedingly long and complicated and would then be useless. We have already said that the title need not be a detailed index of the contents of the law, but

---

[1] Article III, § 17, of the Constitution of Puerto Rico provides in its pertinent part: "Every bill, except general appropriation bills, shall be confined to one subject, which shall be clearly expressed in its title."

merely a signpost of the matter covered thereunder, *People* v. *Pérez*, 83 P.R.R. 221, 223 (1961) ; *Sunland Biscuit Co.* v. *Minimum Wage Board*, 68 P.R.R. 345, 353 (1948).

The title of the Vehicle and Traffic Law expresses clearly, among other things, that it is an Act "to regulate the traffic of vehicles and pedestrians," and adds at the end the following: ". . . and to impose penalties for violations of the provisions of this act." Sess. Laws 1960, p. 408. To provide for the case of intoxicated drivers comes clearly within the subject "to regulate the traffic of vehicles and pedestrians." The error assigned was not committed.[2]

---

[2] The habit of making the title of a law exceedingly long and detailed which apparently became a practice in Puerto Rico approximately two decades ago was due, we believe, possibly among others, to two particular factors: (a) the fear of a legislature which was carrying out a comprehensive social and economic reform that its laws could be annulled because of mere technical defects by a presumably conservative judiciary, and (b) the imitation of the style of North American legislation, the tendency of which is to set forth details in the titles as well as in the texts of the laws themselves. This may be explained, which does not mean that it is justified, in such legislation because the original law of the United States was casuistic and they were not used to the broad style of the European codes. Compare the terse text, despite its defects, of our Civil Code with the North American statutes and many of our recent laws. It is an interesting phenomenon that in the field of common law, when legislation is enacted, attempts are made to exclude up to the maximum the judicial contribution; hence, the desire to include even the most specific details in the statutes, while, on the contrary, the legislation of civil-law countries is as a whole broadly drafted and counts on the judicial work for its fair and rational application to each concrete case. Paton, Jurisprudence 190 (1955) ; Puig Brutau, *La Jurisprudencia como Fuente del Derecho* 137; Stone, Julius, The Province and Function of Law 434 (1961). In 47 Harv. L. Rev. 1367, 1384 and 1392, Franklin points out that while the entire French Civil Code has about 100,000 words, the Restatement, Contracts, alone has about 300,000 words, and the Restatement, Torts, consists of 1059 sections as compared with half a dozen articles which the civil codes merely devote to that subject. In *Banchs* v. *Colón, ante,* p. 471, we considered the individualization of the rule in specific cases, and there we cited literature on the matter.

For examples of brief titles which express adequately the subject of their laws and which also follow the best statutory drafting tradition, see those of the following laws: Judiciary Act (1952), Police Law (1956), Notarial Act (1956), General Corporation Act (1956), Insurance Code

3. That § 5-801 *supra* is unconstitutional because it deprives defendant of his right to a trial by jury. That section provides that any violation of its provisions shall be heard before the Superior Court by a court without a jury. Section 5-802 of the Vehicle and Traffic Law, 9 L.P.R.A. § 1042, prescribes the penalties for the violations of § 5-801. It provides that violations thereof shall constitute a *misdemeanor* and prescribes *jail* penalties, which vary according to the different alternatives which said § 5-802 contains. Appellant's theory is that, notwithstanding the express terms of § 5-802 and of the provisions of § 14 of the Penal Code, 33 L.P.R.A. § 35,[3] the offense in question, because of its "severe penalties," should be considered as a felony rather than as a misdemeanor. The "severe penalties" to which appellant refers begin with a minimum of 10 days' imprisonment in jail and a maximum of one year, and where as a result of driving in a state of intoxication corporal injury is caused to a person, the offense shall also be a misdemeanor and the penalty is imprisonment in jail for not less than two months nor more than two years. We do not agree with appellant's concept of severity, especially since the legislation involved is aimed at protecting the lives of human beings

---

(1957), Horizontal Property Act (1958), and Municipal Law (1960). Although of ·a slightly different nature, mention may also be made, as examples of short and adequate titles, of those of the Rules of Civil Procedure (1958) and of the Rules of Criminal Procedure (1963), and although approved under a constitutional system distinct from the present, those of the following laws are models of conciseness and clarity: Political Code, Civil Code, Mortgage Law, Penal Code, Code of Criminal Procedure and Code of Civil Procedure.

[3] Section 14 *supra* reads as follows: "A felony is a crime which is punishable with death, or by imprisonment in the penitentiary. Every other crime is a misdemeanor. When a crime punishable by imprisonment in the penitentiary is also punishable by fine or imprisonment in jail, in the discretion of the court, it shall be deemed a misdemeanor for all purposes after a judgment imposing a punishment other than imprisonment in the penitentiary." As is known, the death penalty no longer exists in Puerto Rico.

and represents an effort to avert in part a civil emergency, *People* v. *Superior Court,* 86 P.R.R. 791 (1962),[4] but even if we agreed we could not say that he is right, since the determination of which offenses are felonies and which are misdemeanors is one for the Legislative Assembly. In this case, as we have seen, the Legislative Assembly made that determination. It should be recalled that the legislative bodies not only have the power to determine the nature of the offenses, but they must also create the offenses. *Nulla poena sine lege.*

Appellant was not tried for a felony nor for a misdemeanor which at the time the Constitution was adopted entailed the right to a trial by jury. The Constitution left to the discretion of the Legislative Assembly the granting or not of a trial by jury in misdemeanor cases for which at the time the Constitution was adopted the existing legislation did not grant a trial by jury. This is precisely the case at bar, a misdemeanor created subsequent to the adoption of the Constitution and for which the Legislative Assembly provided that it be tried before the court without a jury. It had full power to so provide. As we stated in *People* v. *Miranda,* 79 P.R.R. 667, 670–71 (1956), "As clearly indicated by the report of the Bill of Rights Committee and the debates of the Constitutional Convention, the term 'felony' employed in that constitutional provision does not include any offense classified as a misdemeanor under the legislation enacted before the Constitution went into effect, which did not necessarily grant the right to trial by jury. *The nature of the offense and the penalties provided by law are of slight importance in this respect.* Here the violations for which appellant was prosecuted were characterized as

---

[4] There we said:

"I do not believe that 'the urgent public necessity' created by the incidence of fatal accidents on our roads requires a refined exposition to prove its right to be included in the list of civil emergencies."

misdemeanors under Act . . . . And the law specifically provides that the trial shall be held by the court." (Italics ours.)

4. That § 5-801 is unconstitutional because it deprives defendant of the presumption of innocence. We already decided this contention adversely to appellant's position here in *People* v. *Superior Court, supra.* To what we said there we may add what follows. What that section provides is that, *given certain evidence*—the results of the blood test—certain presumptions will be inferred. Defendant commences by enjoying the presumption of innocence guaranteed to him by the Constitution, but such presumption is not infinite; it vanishes in the light of the evidence. As we stated in *People* v. *Superior Court,* 84 P.R.R. 378 (1962), this is a case in which the objective evidence—the result of the clinical test— substitutes the opinion evidence.

█ 5. That the trial court erred in finding defendant guilty, since the determination of probable cause was made without complying with the legal requirements. Appellant contends that it does not appear "that any judge determined probable cause to arrest defendant and to order his accusation." He is not right for the reasons which follow: It appears clearly from the record, as testified by policeman Feliciano, that defendant "was taken to the home of Judge Flores, who charged him with driving in a state of intoxication." Tr. Ev. 4. The policeman is not an expert in the law and he cannot be required to distinguish between the information of the district attorney and the determination of probable cause by the judge. Moreover, when testifying he need not repeat verbatim the words of the legal precepts. Appellant himself, at p. 14 of his brief, in discussing the error which is numbered 7 in this opinion, says: "From the judgment roll and the transcript of the evidence it appears that (1). apparently Judge Flores determined probable cause; (2) District Attorney Zoilo Dueño examined the witnesses,"

etc. We have no doubt that the judge determined that there was probable cause.

■ Furthermore, appellant waived this question by failing to raise it before the trial court, 34 L.P.R.A. § 1171; *People* v. *Pacheco*, 83 P.R.R. 505, 511 (1961); *People* v. *Montalvo*, 83 P.R.R. 700, 707 (1961); *People* v. *Rivera*, 83 P.R.R. 452, 457 (1961); *Jaca* v. *Delgado, Warden*, 82 P.R.R. 389, 400 (1960); *People* v. *Torres*, 81 P.R.R. 659, 665 (1959); *People* v. *Adorno*, 81 P.R.R. 504, 519 (1959); *People* v. *Fournier*, 80 P.R.R. 376, 391 (1958); *People* v. *Negrón*, 79 P.R.R. 279, 284 (1956); *People* v. *Santiago*, 78 P.R.R. 64, 68 (1955); *People* v. *Jiménez*, 78 P.R.R. 7, 11 (1955).

6. That the trial court erred in finding defendant guilty because his arrest was illegal. Let us examine the facts. Part of the evidence heard before the trial court consisted in the testimony of policeman Ángel L. Feliciano. In the pertinent part he testified as follows:

"Q. On or about November 26, 1960 and in Río Piedras, Puerto Rico, did you have occasion to meet with defendant?
A. Yes, sir.
Q. Could you say of what your meeting consisted?
A. On that day, at 7:00 a.m., we were patrolling the sector of highway No. 1 between Caguas and Río Piedras. As we were coming . . .
Q. To whom do you refer?
A. To policeman Tomás Díaz and myself. Automobile 712-829 went past us.
Q. Where is Artemio Auto Parts located?
A. On the road from Río Piedras to Caguas. Automobile 712-829 went by, operated by this man, it went past us by the left hand side. When this man's automobile was in front of us we noticed that it zigzagged twice and ran into the island which divides the road. We ordered him to stop at intersection 88. I got out there, asked him for his license, and then he got out and handed me the license. I asked him for the car license, and when I asked him if the car was his he said that it was not.

I noticed that he smelled strongly of liquor. I walked over to the patrol car and this man walked behind me and had to lean against the patrol car because he could not hold himself up. I also asked him to accompany me to the hospital to have a sample taken of his blood, urine or saliva, which he did. He talked incoherently, stuttered, his eyes were red, and he had to lean against the patrol car because he could not hold himself up. I asked him to accompany me to the hospital, which he did, where Dr. López took a blood sample." Tr. Ev. 3–4.

The Superior Court gave credit to that evidence, and we have no reason to disturb the weighing made by that court.

■ The arrest was legal because defendant was arrested by the policeman upon noticing that he was driving in a state of intoxication, which constitutes a public offense. A policeman may make an arrest without a warrant whenever a public offense has been committed or attempted in his presence. Even a private citizen may arrest under those circumstances. 34 L.P.R.A. §§ 243 and 244; Rules 11 and 12 of the Rules of Criminal Procedure. Where a driver operates an automobile in the manner above-described and is observed by a police officer, the latter has authority in law to arrest him for committing an offense in his presence. *People* v. *Vargas*, 80 P.R.R. 285, 286 (1958); *People* v. *Santiago*, 78 P.R.R. 627, 634 (1955); and *People* v. *Soto*, 77 P.R.R. 193, 198 (1954). In addition to driving in a state of intoxication, probably defendant was also violating § 5-201 of the Vehicle and Traffic Law, 9 L.P.R.A. § 871, which declares that reckless and negligent driving, or without due care and prudence, or in a manner which endangers life and property, shall constitute a public offense. In view of the situation described by policeman Feliciano in his testimony, he was justified in arresting defendant.

■ 7. That the trial court erred in finding defendant guilty, since the information is based on the testimony of witnesses examined by a district attorney other than the

one who filed the information. Appellant contends that "from the judgment roll and the transcript of the evidence it appears that (1) apparently Judge Flores determined probable cause; (2) District Attorney Zoilo Dueño examined the witnesses; and (3) Assistant District Attorney Roberto de Jesús Cintrón filed the information based on the testimony of witnesses examined before District Attorney Zoilo Dueño believing that there is just cause for filing the same." We already considered and decided this question adversely to appellant's position in *People* v. *Seda*, 82 P.R.R. 695, 700 (1961), in which we said:

". . . In our opinion what is really of importance is that the information be supported by sworn statements, but it is not essential that the statement be sworn before the same district attorney who in turn files and verifies the information. [Citations.] Appellant's contention relies exclusively on a literal and forced interpretation of the legal text, which we feel constrained to reject because it leads to a result not intended by the Legislature. As correctly suggested by the Solicitor General in his brief filed before this Court 'the prosecuting attorney' in said section refers to the generic concept of 'representative of the state.'"

The provision cited by appellant, 34 L.P.R.A. § 127, contains a printed form which is not mandatory in its literal form. That section reads at the beginning: "It *may* be *substantially* in the following form:" (italics ours), and the printed form follows. It should be noticed that it says "may" instead of "must." It is plain that the form therein suggested as well as any other which complies substantially with the law could be used.

■ Furthermore, the matter may be waived and appellant waived the same by failing to raise it in the trial court. Already in *People* v. *Alonso*, 25 P.R.R. 190, 191 (1917), we had said: "[W]e have held repeatedly that failure to state that the witnesses were examined by the *fiscal* is not a defect

which materially prejudices the rights of the defendant, and that such omission must be pleaded previously in the lower court in order to be considered on appeal."

■ 8. The court erred in finding defendant guilty, since he was not arraigned. The following appears from the record: "Defendant appeared personally for arraignment assisted by his attorney . . . the information was considered read and a copy thereof was delivered to defendant. He pleaded not guilty." Defendant also appeared at the trial personally assisted by his attorney. He reiterated his plea of not guilty and evidence was heard. As may be seen from the foregoing, defendant waived the right to be arraigned in the presence of his attorney. That was a conscientious and intelligent waiver. Anyway, copy of the information was delivered to him in the act of arraignment. That took place on January 24, 1961. The trial was held on March 15, 1961. There is no question that defendant and his attorney had sufficient time and opportunity to read the information, and in view of the accused's defense we have no doubt that they read it. Defendant was not prejudiced at all. His waiver was legal, *People* v. *Colón*, 70 P.R.R. 756, 761 (1950).[5]

■ 9. That the regulation on taking blood smears is void. In support of the alleged nullity, appellant contends that the procedure provided by Act No. 81 of March 14, 1912 (Sess. Laws, p. 212) was not followed by the Secretary of Health in adopting such regulation. We do not agree with appellant. Act No. 81 referred to the former Sanitation Service which had been created in 1911 (Act No. 68 of March 9, 1911, Sess. Laws, p. 214) and which ceased to exist in 1917 when the Department of Health was created by the Organic Act of that year. The existing Vehicle and Traffic Law, an Act of 1960, expressly and clearly empowers the Secretary of Health,

---

[5] Under the new Rules of Criminal Procedure, the reading of the information may also be waived, but copy thereof shall be delivered to defendant. Rule 52.

an office created in 1952 by the Constitution of Puerto Rico, to adopt the regulation in question. Section 5-803 (d) of that Act, 9 L.P.R.A. § 1043 (d), in its pertinent part provides:

"The Secretary of Health is hereby empowered to regulate the manner in which and the places where the blood smears and urine samples are to be taken, bottled and analyzed, as well as the other proceedings related to the chemical analysis, but subject to the provisions of subsections (f), (g) and (h) of this section."

After investing the Secretary with power to adopt such regulation, the Vehicle and Traffic Law of 1960 did not need to set forth in detail the procedure for doing so because the Rules and Regulations Act of 1958, No. 112 of June 30, 1957, 3 L.P.R.A. §§ 1041–59, is in the books, and it prescribes the procedure for the adoption and promulgation of regulations by the offices and departments of the executive branch of the government. The publication *Rules and Regulations of Puerto Rico* is the product of that Act.

■ 10. That in any event the evidence shows that there was a substantial departure from the procedure prescribed by the regulation. The record discloses that there was no such substantial departure, *People v. Echevarría*, 87 P.R.R. 196 (1963), but we need not discuss the point at length since, irrespective of the chemical analysis of the blood, the remainder of the evidence warrants the judgment of conviction of the Superior Court.

There is, however, one thing we wish to clarify. Appellant seems to attach much importance to the fact that defendant "did not become upset or imprudent." Defendant was not convicted of disturbance of the peace nor of resistance to public officers. Sections 368 and 137 of the Penal Code, 33 L.P.R.A. §§ 1439 and 495. It is not necessary to prove that defendant became imprudent in order to prove that he was intoxicated. It is of general knowledge that some drunkards become very refined, others become quarrelsome; some

feel happy and others take to crying. Others simply get sleepy and fall asleep and become very quiet. The law does not punish driving a vehicle while intoxicated because the driver becomes ill-behaved, but because driving a motor vehicle in that condition endangers his life, the life of those who may be riding in the vehicle, and that of other persons who may be on the streets, on the sidewalks, in the parks, and on the porches.

The errors assigned were not committed. The judgment appealed from will be affirmed.